O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY CAMPOS<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF IRWINDALE, et al.<br><br>        Defendants. | Case No. CV12-05805JGB(MRWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 29)** |

    Plaintiff Rudy Campos brings this action against the City of Irwindale and Lieutenant Mario Camacho for retaliation in violation of his rights under the First Amendment of the U.S. Constitution. Before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Doc. No. 29.)

# I.   BACKGROUND

**A.   Procedural History**

On July 5, 2012, Plaintiff filed his Complaint against the City of Irwindale ("City") and Mario Camacho, both individually and in his capacity as Lieutenant for the Irwindale Police Department ("IPD").  (Compl. (Doc. No. 1).)  Plaintiff's Complaint is for injunctive and monetary relief pursuant to 42 U.S.C. section 1983 and the First Amendment to the U.S. Constitution.  (Id.)

A pretrial conference was held before the Court (Wilson, J.) on November 26, 2012, at which the Court vacated the trial date and set the schedule for Defendants' Motion for Summary Judgment.  (Minutes of Pretrial Conference (Doc. No. 28).)

Defendants filed this Motion on January 7, 2013, attaching
 1.  Declaration of Jeffrey P. Thompson (Doc. No. 30);
 2.  Declaration of Mario Camacho (Doc. No. 31);
 3.  Declaration of Eva Carreon-Contreras (Doc. No. 32); and
 4.  Statement of Uncontroverted Facts ("SUF") (Doc. No. 33.)

Plaintiff opposed the Motion on January 14, 2013 (Doc. No. 36), attaching

1. Statement of Controverted Facts ("Statement of Genuine Issues" or "SGI") (Doc. No. 35));
2. Declaration of Rudy Campos (Doc. No. 35-1); and
3. Declaration of Brandi L. Harper (Doc. No. 35-2).

On January 22, 2013, Defendants filed their Reply (Doc. No. 38) and their list of evidentiary objections ("Objections") (Doc. No. 39).

## II.   LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment.  See Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (citing Anderson, 477 U.S. at 256-57); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030,

1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because summary judgment is a "drastic device" that cuts off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any genuine issue of material fact. See Avalos v. Baca, No. 05-CV-07602-DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999)).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.; Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). "[A] summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252.  See also William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 14:144.  A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party.  Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

### III. FACTS

**A.  Preliminary Matters**

Defendants object to several statements made by Campos in his declaration and argue that evidence of

adverse employment actions occurring before July 5, 2010, are time-barred. (See Objections; Motion at 22-23.) The Court considers these issues in turn.

First, the Court sustains Defendants' objections based on Federal Rule of Evidence 602, as Campos sets forth no factual basis or personal knowledge for his assertions regarding (1) Camacho's intent and motivation or influence on other officers (Objections ¶¶ 1, 3, 10, 11); (2) what constituted "common knowledge" among the other officers (Id. ¶ 2); and (3) the IPD's general practices regarding performance evaluations and overtime and the IPD's historical compliance with the set policies (Id. ¶ 7, 8, 9). The Court also sustains Defendants' hearsay objections to Campos's statements in his declaration regarding Camacho's actions or statements relayed to Campos by others. (Id. ¶ 4, 5.) Scosche Inds, Inc. v. Visor Gear Inc., 121 F.3d 675, 681 (9th Cir. 1997) ("[H]earsay evidence in Rule 56 affidavits is entitled to no weight."). Finally, the Court sustains Defendants' objection, on the basis of lack of authentication, to Exhibit 2 of the Campos Declaration, which consists only of an unlabeled excerpt of an unknown handbook. (Objection ¶ 6.) See Fed. R. Evid. 901.

Second, Defendants argue that Campos's claims regarding events occurring before July 5, 2010, are time-

6

barred by the two-year statute of limitations for personal injury claims.  (See Mot. at 22-23, citing Action Apartment Assoc., Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007).) Campos argues that the statute of limitations should not apply here because "certain actions which are time barred may be actionable if they are part of a systematic or repeated pattern of conduct."  (Opp'n at 16-17, citing Nat'l RR Passenger v. Morgan, 536 U.S. 101, 115 (2002). Campos's argument is unavailing as he has not submitted a sufficient factual basis for finding anything other than "discrete acts of . . . retaliatory adverse employment decision[s]." Morgan, 536 U.S. at 114.  As elaborated below regarding the submitted facts, each act alleged by Campos is "discrete" and "easy to identify," as opposed to ongoing and repeated conduct like was involved in the hostile work environment claim in Morgan.  Id. at 114-15. Campos, like the plaintiff in Morgan, "can only file a charge to cover discrete acts that occurred within the appropriate time period."  Id. (internal quotation marks omitted).  Thus, the Court does not consider Campos's alleged adverse employment actions that occurred before July 5, 2010.

**B.   Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted.[1]  They are "admitted to exist without controversy" for the purposes of these motions.  See L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

Campos has been a police officer with the IPD since July 1, 2007.  (SUF ¶ 16; SGI ¶¶ 16, 97; Campos Decl. ¶ 1.)  Since joining the IPD, Campos has been active in the Irwindale Police Officers Association ("IPOA") and was serving as a board member on July 3, 2008.  (SUF ¶¶ 1-2; SGI ¶¶ 1-2, 99; Campos Decl. ¶ 3.)  On that day, the IPOA held a meeting, at which Campos and Defendant Mario Camacho were both present, to discuss ongoing negotiations with the City regarding pay and benefits.  (SUF ¶¶ 3-4; SGI ¶¶ 3-4; Thompson Decl., Ex. A.)  The union held a vote to decide whether to accept the City's contract offer.  (SUF ¶ 6; SGI ¶ 6.)  Although the union

---

[1] To the extent any facts submitted by the parties are not mentioned, the Court has not relied on them in reaching its decision.

8

votes were usually conducted by written ballot, Camacho requested that this vote be conducted by a show of hands. (SGI ¶ 103; Campos Decl. ¶ 7.) Campos was the only IPOA member to cast a vote in favor of the City's offer. (SUF ¶ 6; SGI ¶ 6.) The union then discussed and voted on whether to submit a counter-offer to the City; Campos voted against the counter-offer. (SUF ¶ 9; SGI ¶ 9.) After this second vote, Camacho told Campos, "That's the last time you get any overtime from me!"[2] (SUF ¶ 11; SGI ¶¶ 11, 104.) When Campos voted in favor of accepting the City's offer, Camacho pointed at him and said, "we'll see." (SGI ¶ 104; Campos Decl. ¶ 8.)

### 1. **Overtime**

Since the July 3, 2008 meeting, Campos claims to have been denied overtime shifts five times, two of which occurred since July 5, 2010. (SUF ¶ 22; Pre-Trial Conference Report, Thompson Decl., Ex. I.) On one occasion in 2011, Camacho withdrew overtime that was erroneously assigned to Campos; this is the only instance of lost overtime involving Camacho for which Campos has

---

[2] Camacho states he does not recall whether he made this statement or not, but, if he did, "it was merely a joke." (SUF ¶ 13; Camacho Decl. ¶ 4.) Camacho's assertion does not controvert Campos's alleged fact; it is thus deemed uncontroverted for purposes of this Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

provided evidentiary support. (SUF ¶ 27, Campos Dep. at 171:3-8, Thompson Decl., Ex. B.)

From the time Campos joined the IPD through June 30, 2011, he was either the highest or second highest earner of overtime in the IPD, and he was the third highest overtime earner from July 1, 2011 to June 30, 2012. (SUF ¶¶ 33-37; SGI ¶¶ 33-37.) Nevertheless, during that same period, Campos's overtime declined steadily, from $82,210 in 2007-2008, to $75,475 in 2008-2009, to $47,015 in 2009-2010, to $29,036 in 2010-2011, and then rose to $31,922 in 2011-2012. (Id.)

### 2. Performance Evaluations

In the year before the July 3, 2008 union meeting, Campos received an overall rating of "competent" on his performance evaluation. (SUF ¶ 49; SGI ¶ 49, 51.) In his 2010 performance evaluation, Campos received a rating of "highly satisfactory" from Sergeant Ritter. (SUF ¶ 71; SGI ¶ 71.) Campos wrote a rebuttal to this evaluation in which he asserted that the evaluation was influenced by the negative personal feelings of his supervisors and by his union activities, though he did

not mention the July 3, 2008 meeting or his votes in that meeting.  (SUF ¶¶ 76, 77, 78; ¶ SGI ¶¶ 76, 77, 78[3])

Campos's 2011 performance evaluation was initially prepared by Sergeant Phil Reeves, but was rejected by Chief Dennis Smith and given to Sergeant David Fraijo to complete.  (SUF ¶¶ 79, 84, 85; SGI ¶¶ 79, 84, 85.)  As in 2010, Campos received a "highly satisfactory" rating on his 2011 evaluation.  (SUF ¶ 86; SGI ¶ 86.)  Campos does not have evidence that Smith's actions regarding the 2011 evaluation were related to the July 3, 2008 union meeting or that Camacho was at all involved in the creation of the evaluation.  (SUF ¶ 89, 90; SGI ¶ 89, 90[4].)  Like in 2010, Campos wrote a rebuttal to the evaluation, but failed to set forth any belief that the evaluation was

---

[3] Plaintiff disputes this fact by specifying that it was "the negative feelings Camacho had towards him since the 2008 vote" that influenced the performance evaluation.  Campos's purported factual dispute fails to actually address Defendants' submitted fact or evidence but instead sets forth additional information; the Court thus deems this fact uncontroverted.

[4] Campos purports to dispute this fact, but provides no supporting evidence.  Further, Campos admitted this fact in his deposition.  (See Campos Dep. 142:6-11.)  A deponent has the right to change the substance of his deposition testimony but, for summary judgment purposes, the Court disregards the changes unless the deponent provides a satisfactory explanation.  See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F3d 1217, 1225-1226 (9th Cir. 2005); see also Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

11

influenced by his votes at the July 3, 2008 meeting. (SUF ¶ 91, 92, 93; SGI ¶ 91, 92, 93.)

**C.  Controverted Facts**

The critical fact in dispute in this matter is whether Camacho took action against Campos based on Campos's votes at the July 3, 2008 union meeting. Defendants submit that Camacho took no such action. (SUF ¶ 13.) Campos disputes this and submits his declaration as evidence. (SGI ¶ 13.) Based on Camacho's statements to Campos at the union meeting and Campos's claims of at least one specific instance in which Camacho withdrew overtime since July 5, 2010, the Court finds that there exists a genuine dispute of fact. Nevertheless, for the reasons set forth below, the Court finds that this disputed fact is not material as the conduct alleged by Campos does not constitute an adverse employment action.

Regarding Campos's 2010 and 2011 performance evaluations, there are multiple facts in dispute regarding how they were prepared, what the ratings signify, and what effect those ratings have. (See SUF ¶¶ 74-93.) Nevertheless, the Court finds none of these to be disputes regarding a material fact, as Campos has submitted no evidence to support his claim that Camacho was involved in his 2010 or 2011 evaluations or that

anyone who was involved in their preparation was influenced by Camacho.

### III.  DISCUSSION

As a threshold matter, to sustain a 42 U.S.C. section 1983 claim of retaliation in violation of the First Amendment, a plaintiff must demonstrate "that he suffered an adverse employment action."  Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000).  "If the facts alleged support[] a finding that [the plaintiff] suffered an adverse employment action, [the plaintiff] then ha[s] to demonstrate that (1) the speech at issue was constitutionally protected and (2) that the speech was a substantial motivating factor in the adverse employment action."  Id.

**A.   Adverse Employment Action**

As Campos has not submitted evidence demonstrating a connection between his votes at the union meeting and his performance evaluation, the threshold matter of law to be determined is whether the established facts regarding denial of overtime constitute an adverse employment action.  See id. (finding that the plaintiff "failed to introduce evidence demonstrating a nexus between his

13

statements to [the defendant] and any adverse employment action he may have suffered").

Based on the uncontroverted facts, Campos is unable to show that any adverse employment action was taken against him. Campos does not dispute that, "[i]n 2011, Camacho withdrew overtime that was assigned to plaintiff in error by Sgt. Avila. This was the only incident of overtime that [Campos] testified to at his deposition that involved Camacho." (SUF ¶ 27; SGI ¶ 27.)

An adverse employment action in the First Amendment context is one "of a nature that would stifle someone from speaking out." Blair v. Bethel Sch. Dist., 608 F.3d 540, 544 (9th Cir. 2010). "Minor indignit[ies] and de minimis deprivations of benefits and privileges on account of one's speech do not give rise to a First Amendment claim." Id. In Blair, the court did not find the plaintiff's removal as a Board member to meet this standard. See id. Accordingly, one instance in which Camacho withdrew overtime for the justifiable reason that it was assigned to Campos in error, when Campos was consistently the highest or one of the highest earners of overtime, is not, as a matter of law, sufficient to stifle someone from engaging in constitutionally protected speech. As the Court finds that there are no triable issues of fact regarding whether Campos suffered

an adverse employment action as a result of Camacho's conduct, Camacho is entitled to summary judgment.

**B.   Claims Against the City**

Given the Court's finding that the uncontroverted facts show that no adverse employment action was taken against Campos, Campos lacks the required injury-in-fact to have standing to bring a section 1983 claim against the City. "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). To comply with that requirement, litigants must demonstrate a "personal stake" in the suit. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). A plaintiff has a personal stake in the suit when "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000).

15

Section 1983 provides for damages "designed 'to *compensate injuries* caused by the constitutional deprivation'" Id. at 309 (quoting Carey v. Piphus, 435 U.S. 247, 265 (1978) (emphasis in original). As the Court finds that Campos, given the uncontroverted facts, cannot allege an injury, Plaintiff does not have standing to bring a claim for municipal liability against the City. Therefore, the City and Camacho are entitled to summary judgment on all Campos's claims.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

Dated: February 11, 2013

Jesus G. Bernal
United States District Judge